# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| PAUL V. MANGANO,<br><br>   Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>   Defendant. | No. 16-CV-147-KEM<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Plaintiff Paul Mangano seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Mangano argues that the administrative law judge (ALJ), Linda Marshall, erred in assigning weight to the medical opinions and that her resulting determination of his mental residual functional capacity (RFC) is not supported by substantial evidence. Mangano also argues that the ALJ's RFC assessment does not include limitations reflecting her finding during step three of the disability determination that Mangano suffers moderate restrictions in concentration, persistence, or pace. I **affirm** the Commissioner's decision.

## I.   BACKGROUND

Mangano filed an application for DI benefits on September 13, 2013, alleging disability beginning on May 1, 2013. AR 8. Prior to May 2013, Mangano had worked as a police detective, but he lost his job due to performance problems and his alcoholism.

---

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

AR 13, 34, 498, 860. He alleged disability based on depression, post-traumatic stress disorder (PTSD), anxiety, alcoholism, diabetes, high blood pressure, head injury, and "back injuries with leg issues." AR 10, 58.

Mangano was referred for a consultative examination with Dr. Richard Frederick, a psychologist. AR 62, 630. After examining Mangano on January 11, 2014, Dr. Frederick issued an opinion evaluating Mangano's mental RFC,[2] concluding:

> The claimant appears to be able to understand, remember, and carry out complex instructions.
> The claimant appears able to concentrate, persist, and keep pace on complex tasks.
> The claimant appears to have intact capacity to interact effectively in complex work situations.
> The claimant appears to have intact capacity to adapt to changes in complex work situations.
> The claimant is able to manage his own funds.

AR 630-33. Dr. Frederick found that Mangano suffered from chronic alcoholism and mild depressive disorder. AR 632.

Shortly thereafter, on January 16, 2014, Dr. Keith Allen, a state agency psychological consultant, opined that Mangano suffered from no severe mental impairments, and Mangano's application for DI benefits was denied. AR 63, 65, 69. Mangano requested a hearing before an ALJ. AR 77. He submitted additional RFC opinions as evidence, two from psychologist Dr. Jerry Morris and one from therapist Shannon Hiser, both of whom practiced at Community Mental Health Consultants (CMHC), where Mangano received regular treatment beginning in January 2014 (he received treatment from CMHC sporadically prior to January 2014, including in November 2012 and September 2013). AR 421-26, 473-551, 639, 775-873, 968-1017,

---

[2] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

1019-22. Dr. Morris conducted several psychological tests on July 11, 2013, and concluded:

> This patient is functioning as a child developmental level with a severe mood disorder resulting in failure in most adult roles, insecurity, paranoia, and resentment and global negativity. He has low frustration tolerance, is brooding, and has low stress tolerance. Consequently, he will regress[] rapidly under slight pressure, and he will display distortive thinking, paranoiac and insecurity in the extreme and persecutory delusions and blaming others for these problems. He is overwhelmed by life[] [and] occupational demands . . . . At times he becomes seriously suicidal and he has significant suicide potential. . . . He also is medication and treatment noncompliant often inconsistent basis and has abused his pain medicine and [his] sedative hypnotic medication. He is likely to continue to do so in the future unless treated in highly structured settings.
>
> This patient will not likely fulfill adult roles such as, and employee for, or function well in social settings and relationships without significant years of psychotherapy and growth. He will be indecisive, isolated, [and] hyper irritable . . . .

AR 425. Ms. Hiser's February 13, 2014 opinion regurgitated these findings, explicitly referring to Dr. Morris' July 11, 2013 evaluation. AR 639. Dr. Morris' second RFC opinion, completed on February 20, 2015, opined that Mangano suffered from extreme limitations in social functioning and maintaining concentration, persistence, or pace; that he would suffer from repeated episodes of decompensation in work-like settings; that he would frequently (1/3 to 2/3 of an eight-hour day) be unable to maintain the attention and concentration necessary to perform simple work tasks; and that he would miss more than four days of work a month. AR 1020-21. He further stated that Mangano would not be able to "maintain adequate self-regulation to get along well with others [and] provide adequate productivity [and] quality of work." AR 1022.

On February 26, 2015, the ALJ held a video hearing at which Mangano and a vocational expert testified, and on March 20, 2015, the ALJ issued a written opinion

following the familiar five-step process outlined in the regulations.³ AR 8-19, 25-26. The ALJ found that Mangano suffers from the following severe impairments: residuals from lumbar surgeries, right elbow surgery, right hand surgery, and right knee surgery; diabetes; hypertension; depression; and anxiety. AR 10. The ALJ found that Mangano's impairments did not meet or equal a listed impairment after opining that he suffered from mild limitations in his activities of daily living; moderate limitations in social functioning; and moderate limitations in concentration, persistence, or pace. AR 11. The ALJ opined that Mangano retained the RFC to perform light work but that "he is limited to simple, routine work with simple instructions and occasional contact with supervisors, cow-workers [sic], and the general public." AR 12. Thus, although Mangano could not perform his past work, the ALJ found he was not disabled because he retained the RFC to work as a housekeeper, laundry worker, and machine tender. AR 18-19.

When determining Mangano's RFC, the ALJ noted Mangano testified that his conditions affect his ability to remember, complete tasks, concentrate, and follow instructions and that depending on the amount of pain he was in, he could pay attention for 30 to 60 minutes. AR 12-13. The ALJ did not fully credit Mangano's testimony. AR 13. The ALJ noted Mangano stated in a function report that "he could follow spoken instructions if they are short and uncomplicated" and that he could ask questions, which the ALJ found "consistent" with the RFC determination. AR 13. The ALJ also pointed to some of the claimant's activities of daily living as "support . . . that he can perform a range of unskilled, light work." AR 13. The ALJ then spent four pages summarizing

---

³ "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

4

"the relevant medical records," which the ALJ found "show that the claimant's overall treatment history and the objective medical evidence fail to support his allegations." AR 13-17. With regard to Mangano's mental limitations, the ALJ concluded:

> The claimant's depression and anxiety required treatment, but not extensive or frequent inpatient hospitalizations. Although examiners noted at times he had some signs of significant depression and anxiety, others noted he had appropriate mood and affect. No objective signs and no treatment regimen indicates that the claimant cannot perform a range of unskilled work. The claimant testified at the hearing that he was currently enrolled full-time in on-line college courses for Criminal Justice.

AR 17.

The ALJ also considered the medical opinions in the record, assigning weight to each one. The ALJ gave great weight to Dr. Frederick's opinion "because the evidence as a whole supports the opinion." AR 18. The ALJ assigned some weight to Dr. Allen's opinion "but note[d] that there is more evidence to support that the claimant has severe mental impairments." AR 17. The ALJ gave little weight to Ms. Hiser's opinion, noting that she "is not a medical source" and that her "opinion is not supported by the evidence." AR 18. Finally, the ALJ "g[ave] weight to opinions of Dr. Morris . . . where consistent with the [RFC] and medications" but "note[d] that Dr. Morris saw the claimant only four to five times, and as such, [the ALJ] g[ave] little weight to the opinions." AR 18. The ALJ also noted that Dr. Morris' February 2015 opinion was entitled to little weight as "[n]o examiner observed signs indicative of the limitations, and the claimant's own daily activities are inconsistent with the limitations." AR 18.

The Appeals Council denied Mangano's request for review on May 18, 2016. AR 1-3. The ALJ's decision is thus the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Mangano filed a timely appeal (Doc. 3), arguing that the ALJ erred in assigning weight to the various medical opinions in the record evaluating mental RFC and that the ALJ's RFC assessment does not reflect her step-three finding of moderate limitations in concentration, persistence, or pace.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

### A. *Weight to Medical Opinions*

Mangano argues that Dr. Morris' opinion is entitled to controlling weight. Even if not, Mangano argues that the ALJ did not give a "good reason" for assigning little weight to Dr. Morris' and Ms. Hiser's opinions.

When determining a claimant's RFC, the ALJ considers medical opinions from acceptable medical sources "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(a)(1), (b) (2017); 20 C.F.R. § 404.1527(a)(2), (b) (2016).[4] The ALJ must also consider opinions from nonacceptable medical sources, such as therapists. 20 C.F.R. §§ 404.1502, 404.1527(f) (2017); 20 C.F.R. § 404.1513(a) (2016); Social Security Regulation (SSR) 06-03p, 71 Fed. Reg. 45593, 45595-96 (Aug. 9, 2006). A treating source's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

---

[4] The Social Security Administration promulgated new rules for evaluating medical evidence effective March 27, 2017, some of which by their terms apply retroactively. The new and old rules are substantively the same, and I cite to both throughout this opinion: where the section or subpart has not changed from the old rule to the new, I use one cite without the year; where the section or subpart has changed, I cite to both the 2016 and 2017 regulations.

with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If the ALJ declines to give a treating source opinion controlling weight, then the ALJ evaluates the opinions in the record (including those from nonacceptable medical sources) using the following factors:

> (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion."

*Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (quoting 20 C.F.R. §§ 404.1527(d), 416.927(d) (2008)); *see also* 20 C.F.R. § 404.1527(c), (f) (2017); SSR 06-03p, 71 Fed. Reg. at 45595-96. "Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

The ALJ gave little weight to Dr. Morris' July 2013 and February 2015 opinions because Dr. Morris saw Mangano personally only four to five times. AR 18. The ALJ also gave little weight to Dr. Morris' February 2015 opinion based on inconsistencies with Mangano's daily activities and because no examiner's treatment notes "observed signs indicative of the limitations." AR 18. The ALJ found Ms. Hiser's almost identical opinion unsupported by the evidence and also noted that Ms. Hiser is not an acceptable medical source under the regulations. AR 18. Mangano argues that the ALJ's RFC assessment should have included Dr. Morris' limitations, supported by Ms. Hiser's opinion, that Mangano would miss more than four days of work per month, that he would be unable to perform simple tasks due to difficulties concentrating and paying attention, that he would have difficulty getting along with others, and that he would be unable to maintain consistent attendance. AR 421-25, 639, 1019-22.

Substantial evidence supports the ALJ's determination that Dr. Morris' and Ms. Hiser's RFC opinions were inconsistent with the treatment notes and with Mangano's

daily activities. At the time of the hearing, Mangano was a full-time student, taking college courses online to obtain a criminal justice degree. AR 31, 38. He had failed his first semester and was on academic probation, however, although a treatment note from July 2014 reflects that Mangano reported having trouble with his classes due to a bad internet connection (as opposed to his mental impairments). AR 31, 38, 847. After he had lost his job as a detective in May 2013, he worked part time as a police officer for a short time but eventually stopped working due to his impairments. AR 33-34, 148, 179-180, 806, 860, 866. He testified that he goes to therapy four times a week (including group therapy twice a week), and he is able to drive himself. AR 38, 220-21. He reported in October 2013 having no issues with personal hygiene and grooming but said in December 2013 that it now took more effort to dress and bathe himself. AR 218, 248. He is able to go shopping for clothes, groceries, and household items on a weekly basis, often at Walmart. AR 38, 220. He testified that he answers the phone, watches television but sometimes nods off, folds laundry when his wife brings him the basket, and cooks pizza, but does not mow, vacuum, or sweep. AR 37-39. He reported in an October 2013 function report that he can mow using a riding lawn mower for a half hour at a time, however. AR 219; *see also* AR 689. An October 2013 function report reflects that he helps his wife care for the children and takes care of his family's pet dogs by feeding them and letting them outside. AR 218. He goes to church once a month (and does not go more because of the cost of gas). AR 39, 988. Substantial evidence supports the ALJ's determination that Mangano's activities of daily living were inconsistent with the extreme mental limitations found by Dr. Morris and Ms. Hiser. *See, e.g., Hacker v. Barnhart*, 459 F.3d 934, 937-38 (8th Cir. 2006) (substantial evidence supported that claimant's ability to "follow TV shows and her son's sporting events, plan and maintain three gardens, drive a car, and fly to Denver to babysit her young nieces on a regular basis" was inconsistent "with a marked limitation of function in concentration, persistence, or pace"). The ALJ could thus assign their opinions less weight for this

reason. *See id.* at 938 (holding that the ALJ could "diminish[]" the opinion of the treating physician because it was inconsistent with the claimant's daily activities).

The ALJ noted that although some treatment notes reflect "signs of significant depression and anxiety, others note[] . . . appropriate mood and affect." AR 17. Almost all the treatment notes for Mangano's physical ailments reflect normal orientation, mood, and affect from February 2013 to February 2015. AR 624, 878, 885, 893, 901, 908, 914, 922, 928, 935, 942, 948, 954, 961; *but see* AR 619 (September 2013 treatment note for chronic conditions reflects normal orientation, but flat affect and depressed and anxious mood), 928 (May 2014 treatment note for insomnia reflects overall appearance is depressed). Treatment notes from CMHC, where Mangano received therapy, reflect that he was obviously depressed and withdrawn in September 2013. AR 480. He suffered increased mood swings and depression in February 2014 as he tapered off hydrocodone, but his mood stabilized when he stopped undergoing hydrocodone withdrawal. AR 784, 786-88. Other treatment notes from CMHC reflect that Mangano's mental health improved as his sleep improved (discussed further below), and providers noted at various times that Mangano had a bright affect (AR 832), that he was in good spirits (AR 1014), and that he had an even affect (AR 982).

Treatment notes reflect that Mangano sometimes has trouble sleeping (resulting in only two to three hours of sleep a night) due to nightmares he attributes to PTSD from his work as a police officer. AR 451, 526, 646, 934, 950-55. When he does not get enough sleep, he has reported nodding off during the day, even during activities; having difficulty concentrating; and having increased irritability. AR 924, 950. He underwent a sleep study on April 22, 2014, and was diagnosed with sleep apnea. AR 750-51. He was given a continuous positive airway pressure (CPAP) machine to use while sleeping (AR 936), which improved his sleep and correlated to better mental health, as reflected

9

in the CMHC treatment notes.[5] AR 936. For example, on May 29, 2014, he reported that he had a noticeable increase in energy, which he attributed to the use of the CPAP machine and the resulting increased sleep. AR 817. On June 10, 2014, he reported that his nightmares had subsided since using the CPAP machine, and his tone was "conversational" when describing his past traumas. AR 821. On July 1, 2014, he credited his newfound ability to sleep with his mood stabilization. AR 831. On July 14, 2014, he called to schedule an emergency therapy session due to extreme depression and noted that he had not used his CPAP machine for two weeks because a piece was broken. AR 840. The next day, he presented as conversational but somewhat fatigued and reported that he had fixed his CPAP machine and was feeling much better. AR 841. In October and December 2014, he reported increased anxiety and sleep issues due to thunderstorms, which reminded him of things he had seen while working as a police officer in the aftermath of the Joplin tornado. AR 868, 1004. By the end of December 2014 and into January 2015, he reported sleeping better without experiencing nightmares, recognized the benefits of the CPAP machine, and noted the absence of depressive symptoms and accompanying irritability with better sleep. AR 968-69, 972-73, 976, 981-82, 984, 988, 992, 996, 1012.[6]

The treatment notes from CMHC and elsewhere reflect that Mangano still experienced some depression and anxiety once he started using the CPAP machine, triggered by things such as the weather or the stressful holiday season. *See* AR 852, 896, 899, 1001, 1004, 1011, 1015. But as a whole, the treatment notes show that Mangano's mental health was much improved once he started using the CPAP machine regularly. Substantial evidence supports the ALJ's determination that the treatment notes are

---

[5] He was also prescribed trazadone in May 2014 to aid his sleeping, but another doctor recommended he treat his sleep issues without medication in June 2014, and he stopped taking it. AR 656, 929.

[6] On two occasions in mid-January, he reported increased irritability despite the absence of "PTSD" flashbacks, and at one of those appointments, he noted he was having non-traumatic nightmares. AR 973, 976.

inconsistent with the extreme limitations found by Dr. Morris and Ms. Hiser (which included extreme limitations in concentration, persistence, or pace and extreme difficulties in maintaining social functioning). In addition to the evidence cited above, in September 2014, Mangano expressed interest in volunteering at a local thrift store, noting that his strength is being a "people person" who makes friends easily and has many close relationships. AR 861-62. Moreover, Mangano's function report further reflects that he said he gets along well with others. AR 224. Mangano's testimony and function report also support that his issues with memory and concentration are linked to his sleep troubles (and thus improved as his sleep improved). AR 48, 224. The ALJ also noted that Mangano reported being able to follow short and simple instructions well (which is consistent with the ALJ's RFC opinion and inconsistent with Dr. Morris' RFC opinion). AR 13, 222. The ALJ could appropriately find, based on substantial evidence, that the overall record (including Mangano's activities of daily living and CMHC treatment notes) was inconsistent with the extreme limitations opined by Dr. Morris and Ms. Hiser. Thus, the ALJ gave a good reason for assigning their opinions little weight. *See Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (holding that the ALJ gave two good reasons for discounting the opinion of the treating physician, one of which was that the opinion was "not supported by [the treating physician's] prior treatment notes); *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004) (opinions from treating sources may be "given less weight if they are inconsistent with the record as a whole").

Mangano additionally argues that because the ALJ discounted Dr. Morris' and Ms. Hiser's opinions, substantial evidence does not support the ALJ's resulting RFC determination. Relatedly, Mangano argues that the ALJ could not have given more weight to the state agency consultants' opinion and to the one-time consultative examiner's opinion than to Mangano's treating psychologist's opinion.

The ALJ gave great weight to the RFC opinion of Dr. Frederick, a psychologist who examined Mangano once, and some weight to the RFC opinion of Dr. Allen, the state agency psychological consultant. AR 17-18. Dr. Frederick found Mangano less

limited than the ALJ: while the ALJ found Mangano would be able to perform only simple, routine work with simple instructions and occasional contact with others, Dr. Frederick opined that Mangano would be able to perform complex work tasks. AR 633. The ALJ also explicitly noted that the evidence supported more limitations than found by Dr. Allen, who found that Mangano suffered from no severe mental impairments. AR 17, 63-65.

When the ALJ gives a good reason for assigning the treating psychologist's opinion little weight, he may assign more weight to the opinion of a one-time consultative examiner like Dr. Frederick. *See, e.g.*, *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007). Here, the ALJ considered all the medical opinions and conducted an independent review of the medical evidence to determine Mangano's RFC. Substantial evidence (including some medical evidence) supports the ALJ's RFC determination. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (holding that substantial evidence supported the ALJ's RFC determination when he rejected the treating source's RFC opinion and relied on the opinion of a consulting physician and an independent review of the medical evidence, including the treating physician's treatment notes).

### B. Moderate Limitations in Concentration, Persistence, or Pace

During step three of the disability determination, the ALJ opined that Mangano suffered from moderate limitations in concentration, persistence, or pace. AR 11. Mangano argues that the ALJ erred in determining RFC because the ALJ's RFC assessment, which limits Mangano to "simple, routine work with simple instructions," does not adequately reflect moderate limitations in concentration, persistence, or pace.

Mangano relies on *Newton v. Charter*, 92 F.3d 688 (8th Cir. 1996). In that case, the ALJ found that the claimant had borderline intellectual functioning and specifically noted he "'often' had deficiencies of concentration, or persistence or pace." *Id.* at 691, 695. "[T]here [wa]s no dispute in the medical evidence that [the claimant] suffer[ed] from [such] deficiencies." *Id.* at 691. The hypothetical the ALJ posed to the vocational

expert did not adequately capture these deficiencies, however, by describing a person with "a capacity for simple jobs" and "an inability to perform highly skilled or technical work." *Id.* at 694-95.

*Newton* is distinguishable. A moderate limitation in concentration, persistence, or pace in step three (as opposed to deficiencies experienced "often") may not result in significant functional limitation that needs to be incorporated into the RFC. *See Hosch v. Colvin*, No. C15-2014-CJW, 2016 WL 1261229, at *6 (N.D. Iowa Mar. 30, 2016) ("[M]oderate limitations in the 'paragraph B' criteria [in step three] do not necessarily require mental limitations in the RFC assessment."); *see also Davidson*, 578 F.3d at 845 (noting that treating physicians did not find "any significant work-related limitations" when they found only mild and moderate work-related limitations and no marked or extreme limitations); *but see Atkinson v. Colvin*, No. 3:15-CV-05055-BCW, 2016 WL 1464625, at *2 (W.D. Mo. Apr. 14, 2016) (holding that when ALJ finds claimant has moderate limitations in pace at step three, the ALJ must "account for [claimant's] limitations in pace" in his RFC assessment or, at a minimum, "explain why [claimant's] moderate limitations in pace did not translate into a limitation in [claimant's] RFC").

Moreover, even if *Newton* mandated the ALJ to include limitations in her RFC assessment related to her step-three finding of moderate limitations in concentration, persistence, or pace, limiting Mangano to "simple, routine work with simple instructions" is sufficient. The Eighth Circuit has recognized that the RFC assessment "need not contain much more than [that] at issue in *Newton*" to sufficiently capture a claimant's limitations in concentration, persistence, or pace. *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017). For example, the Eighth Circuit has held sufficient under *Newton* an RFC assessment that limited the claimant to "simple, repetitive, routine tasks." *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Here, the ALJ's RFC assessment adequately accounted for the ALJ's step-three finding of moderate limitations in concentration, persistence, or pace. *See Henderson v. Berryhill*, No. 4:15 CV 1624 JMB, 2017 WL 747611, at *8, *10 (E.D. Mo. Feb. 27, 2017) (rejecting claimant's

argument that "limiting [p]laintiff to simple, routine work . . . does not sufficiently account for [claimant's] moderate limitations in concentration, persistence, or pace"). The ALJ did not err in determining Mangano's RFC.

### III. CONCLUSION

I find the ALJ properly weighed the medical opinions and made a proper RFC determination based on limitations that are supported by the record, and therefore the ALJ's decision is supported by substantial evidence. The ALJ's decision is **affirmed**. Judgment shall enter in favor of the Commissioner and against Magano.

**IT IS SO ORDERED** this 28th day of September, 2017.

_____
Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa